Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Yadira Carrasquillo González **Peticionaria** V. Auto Expreso LLC y Otros **Recurrida** | TA2026CE00531 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Caguas Civil Núm. CG2026CV00669 Sobre: Daños |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2026.

El 30 de abril de 2026, la Sra. Yadira Carrasquillo González (señora Carrasquillo o peticionaria) compareció ante nos, por derecho propio, mediante un escrito intitulado *Recurso de Apelación Urgente*[1] y solicitó la revisión de una *Orden* que se emitió y notificó el 20 de abril de 2026 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Mediante el aludido dictamen, el TPI le informó a la peticionaria que no tenía nada que proveer en cuanto a su *Moción de Alivio Provisional Urgente* […]. Asimismo, le ordenó, por tercera ocasión, que informara quien estaría ostentando su representación legal en el presente pleito y que satisficiera la sanción de cincuenta ($50.00) dólares previamente impuesta.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y **revocamos** el dictamen recurrido.

I.

El 25 de febrero de 2026, la señora Carrasquillo, por derecho propio (*pro se*), presentó una *Demanda* sobre daños y perjuicios, cobro indebido, negligencia y violación a derechos humanos contra

---

[1] Cabe señalar que el recurso procedente para atender el presente caso es el *certiorari*, dado que la señora Carrasquillo impugna un dictamen interlocutorio emitido por el TPI. En consecuencia, aunque la parte lo tituló como "Recurso de Apelación Urgente", en realidad se trata de un recurso de *certiorari*.

AutoExpreso LLC (AutoExpreso), KAPSCH TrafficCom USA, Inc. (KAPSCH), José Trinidad, en su carácter personal y oficial, y otros demandados desconocidos (en conjunto, parte demandada).[2] En esta, impugnó los cobros realizados en su cuenta de AutoExpreso (núm. 536-5917) relacionados con su vehículo de tablilla HVG310, alegando que el sistema de peajes operado por Metropista, AutoExpreso y KAPSCH presenta fallas estructurales y prácticas ilegales.

Sostuvo que el esquema operacional entre estas entidades permite la manipulación de datos y carece de integración entre sistemas, lo que provoca que se mantengan activos cobros prescritos y que no se reflejen correctamente los pagos realizados. Indicó que, en su caso, un reporte de boletos emitido el 28 de enero de 2026 incluyó $125.85, desglosados en $80.85 por peajes y $45.00 en "late fees". Alegó que los peajes correspondientes a los años 2018 a 2021 estaban prescritos conforme al término de tres años del Art. 1861 del Código Civil de 1930, 31 LPRA sec. 5291, y que las multas administrativas carecían de base legal.

Indicó que AutoExpreso condicionó la renovación del marbete al pago total de dichas cantidades, incluyendo los cargos ilegales. Expresó que, aunque realizó un pago parcial de $99.65 bajo protesta, no se procesó la renovación. Además, señaló que, al reclamar la corrección de los cargos, el supervisor José Trinidad se negó a tomar acción, a pesar de haber sido informado sobre la prescripción y la ilegalidad de los cargos.

De igual forma, adujo que acudió a múltiples agencias gubernamentales sin obtener remedio, mientras que la falta de marbete le ha causado daños significativos, afectando su capacidad de trabajar, atender a su hijo y cumplir con responsabilidades cotidianas.

---

[2] *Véase*, Entrada Núm. 1, SUMAC TPI. Hacemos constar que la peticionaria no presentó el apéndice con los documentos necesarios para evaluar y atender la controversia ante nuestra consideración, según lo exige nuestro Reglamento. No obstante, recurrimos a SUMAC TPI para acceder al expediente.

Además, planteó causas de acción, incluyendo negligencia, responsabilidad personal del supervisor, violaciones a la Ley de Protección al Consumidor y responsabilidad por fallas sistémicas y falta de supervisión. Adujo que los demandados incurrieron en prácticas como cobrar peajes prescritos, imponer cargos sin autorización legal, operar sistemas deficientes y bloquear indebidamente la renovación del marbete, lo que resultó en daños económicos y otros perjuicios.

En virtud de lo anterior, solicitó como remedio la indemnización por $100,000.00, la devolución del dinero pagado, la eliminación de los cargos prescritos y de las multas, y la renovación del marbete sin condiciones ilegales. Además, pidió órdenes de cese y desista contra estas prácticas, auditorías al sistema, integración tecnológica entre agencias, establecimiento de controles para evitar manipulación de datos, y la creación de mecanismos adecuados para impugnar cobros. Finalmente, solicitó medidas dirigidas al gobierno, incluyendo notificaciones a entidades pertinentes, una moratoria en el bloqueo de marbetes por deudas en disputa y enmiendas legislativas para atender estas problemáticas.

Posteriormente, ese mismo día, a saber, el 25 de febrero de 2026, el TPI emitió una *Orden* que se notificó el 26 de febrero de 2026, mediante la cual le concedió a la peticionaria un término de treinta (30) días para informar quien asumiría su representación legal, al no autorizarse la autorepresentación en el presente caso.[3] Transcurrido dicho término sin que la señora Carrasquillo anunciara su representación legal, el 31 de marzo de 2026, el TPI emitió y notificó otra *Orden* imponiéndole a esta última una sanción de cincuenta ($50.00) dólares por incumplir con la *Orden* del 25 de febrero de 2026.[4] Además, le concedió treinta (30) días para satisfacer la sanción y

---

[3] *Véase*, Entrada Núm. 4, SUMAC TPI.
[4] *Véase*, Entrada Núm. 9, SUMAC TPI.

anunciar su representación legal, so pena de desestimación de su reclamación en caso de incumplimiento.

Inconforme con la referida *Orden*, el 13 de abril de 2026, la peticionaria presentó una solicitud de reconsideración.[5] Allí solicitó la revocación de la sanción de cincuenta ($50.00) dólares impuesta. Fundamentó su solicitud en que compareció *pro se*, es decir, sin representación legal, lo cual fue indicado expresamente en la *Demanda*. Sostuvo que tenía un derecho constitucional a representarse a sí misma y que la *Orden* del tribunal requiriendo notificar quién sería su abogado resultaba de imposible cumplimiento, ya que no contaba con uno ni lo contrataría. Por ello, argumentó que no había incumplido con ninguna orden judicial, sino que simplemente no podía notificar información inexistente.

Alegó que su comparecencia *pro se* era válida y protegida constitucionalmente, y que imponer una sanción por no notificar un abogado constituía una penalización injusta por ejercer ese derecho. Además, solicitó que toda notificación se le dirigiera directamente a su información de contacto, ya que continuará representándose por derecho propio.

Ese mismo día, a saber, el 13 de abril de 2026, el TPI emitió y notificó una *Orden* mediante la cual declaró No Ha Lugar la solicitud de reconsideración y reiteró que no se permitía la autorepresentación, por lo que ordenó a la peticionaria abstenerse de presentar escritos por derecho propio.[6] Sin embargo, el 20 de abril de 2026, la señora Carrasquillo presentó otro escrito intitulado *Moción de Alivio Provisional Urgente (Injunction Pendente Lite)*, mediante la cual, en síntesis, reiteró los argumentos de la *Demanda*.[7] Atendido este escrito, ese mismo día, a saber, el 20 de abril de 2026, el TPI emitió y dictó una *Orden*

---

[5] *Véase*, Entrada Núm. 12, SUMAC TPI.
[6] *Véase*, Entrada Núm. 13, SUMAC TPI.
[7] *Véase*, Entrada Núm. 14, SUMAC TPI.

expresando que no tenía nada que proveer y le ordenó a la peticionaria cumplir con lo previamente ordenado.[8]

En desacuerdo con este dictamen, el 30 de abril de 2026, la señora Carrasquillo presentó el recurso de epígrafe y nos solicitó lo siguiente:

1. Que revoquemos la Orden del 13 de abril de 2026 por violar derechos sagrados de la Constitución del ELA.

2. Que declaremos el derecho constitucional bajo el ELA a actuar pro se en casos civiles.

3. Que ordenemos al TPI a permitir la autorepresentación.

4. Que revoquemos la sanción de $50.00.

5. Que consideremos el patrón de órdenes (13 abril y 20 de abril) como evidencia de hostilidad sistemática.

6. Que reconozcamos que ella está privada de su libertad de tránsito por una deuda que, según alega, está prescrita, sin proceso criminal, violando sus derechos sagrados.

7. Que dada la urgencia (privación de libertad y patrón de hostilidad), se disponga la tramitación expedita del caso.

Examinado el recurso que nos ocupa, y con el propósito de lograr el "más justo y eficiente despacho" del asunto ante nuestra consideración, prescindimos de términos, escritos o procedimientos ulteriores. Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 15, 216 DPR __ (2025).

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en

---

[8] *Véase*, Entrada Núm. 15, SUMAC TPI.

una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

La representación por derecho propio en casos civiles está regida por la Regla 9.4 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V., R. 9.4. Esta regla, que proviene en parte del inciso (d) del Proyecto de Reglas de Procedimiento Civil de 1996, se incorporó a las Reglas de Procedimiento Civil de 2009. El propósito de su incorporación fue codificar los criterios que el Tribunal Supremo estableció para la representación por derecho propio en el caso *Lizarribar v. Martínez Gelpí,* 121 DPR 770 (1988). En este caso, el Tribunal reconoció el derecho a la representación por derecho propio en casos de naturaleza civil, aunque indicó que este derecho no es absoluto e ilimitado.

Existen consideraciones de peso a dilucidarse ante el tribunal que considere una solicitud de representarse por derecho propio. Íd., pág. 785. Al respecto, la Regla 9.4 de Procedimiento Civil, *supra,*

dispone que se deberán tomar en consideración los siguientes factores previo a que el tribunal autorice la representación por derecho propio:

    (a) que la persona no está representada por abogado o abogada;

    (b) que la decisión de autorrepresentación es voluntaria e inteligente, así como con pleno conocimiento de causa y de que la persona será tratada como cualquier otra parte representada por abogado o abogada;

    (c) que la persona puede representarse a sí misma de manera adecuada, de acuerdo a la complejidad de la controversia a adjudicarse;

    (d) que la persona tiene los conocimientos mínimos necesarios para defender adecuadamente sus intereses, cumplir con las reglas procesales y alegar el derecho sustantivo aplicable, y

    (e) que la autorrepresentación no va a causar o contribuir a una demora indebida o a una interrupción de los procedimientos, que no entorpecerá la adecuada administración de la justicia ni atentará contra la dignidad del tribunal, de las partes o de sus abogados o abogadas.

A esos efectos, la referida Regla también dispone que el tribunal debe velar porque dichos requisitos se cumplan desde la comparecencia inicial y durante todo el proceso. El incumplimiento de alguno de ellos constituye causa suficiente para suspender la autorrepresentación y ordenar a la parte comparecer mediante abogado dentro de un término determinado. Íd. Asimismo, la persona que se representa por derecho propio queda sujeta a las mismas sanciones y consecuencias procesales aplicables a las partes representadas por abogado. Íd.

III.

En el presente caso, nos corresponde determinar si el TPI actuó conforme a derecho al prohibir la autorrepresentación de la peticionaria y, posteriormente, imponerle sanciones por incumplir con órdenes dirigidas a que anunciara representación legal.

De entrada, es preciso reiterar que la Regla 9.4 de Procedimiento Civil, *supra*, reconoce el derecho de toda persona a comparecer por

derecho propio en casos civiles. No obstante, dicho derecho no es absoluto, pues su ejercicio está condicionado a una evaluación judicial previa de los criterios establecidos en la referida regla. En particular, el tribunal debe considerar, entre otros factores, si la decisión de autorrepresentación es voluntaria e informada, si la persona posee la capacidad y conocimientos mínimos para defender sus intereses, y si su comparecencia pro se no afectará la adecuada administración de la justicia.

A la luz de lo anterior, surge con meridiana claridad que la Regla 9.4 de Procedimiento Civil, *supra*, impone un deber afirmativo al TPI de evaluar dichos factores antes de autorizar o restringir la autorrepresentación. Es decir, el tribunal no puede, de forma automática o categórica, prohibir que una parte comparezca por derecho propio sin antes realizar el análisis requerido.

Del tracto procesal del presente caso no surge que el TPI haya llevado a cabo evaluación alguna de los criterios dispuestos en la Regla 9.4 de Procedimiento Civil, *supra*. Por el contrario, el mismo día en que se presentó la *Demanda*, en la cual la peticionaria compareció expresamente *pro se*, el TPI emitió una *Orden* requiriéndole que informara quién asumiría su representación legal, bajo el fundamento de que no se permitía la autorrepresentación en el caso. Posteriormente, ante el incumplimiento de dicha orden, el TPI procedió a imponer una sanción económica y, más adelante, reiteró su negativa a permitir la comparecencia por derecho propio, sin que en ningún momento conste una evaluación de los factores reglamentarios.

Este proceder resulta contrario al esquema normativo de la Regla 9.4 de Procedimiento Civil, *supra*. El TPI invirtió el análisis requerido, pues en lugar de evaluar si la peticionaria cumplía con los criterios para autorepresentarse, partió de la premisa de que la autorrepresentación no estaba permitida y exigió la comparecencia mediante abogado. Más aún, impuso sanciones por el incumplimiento

de una orden que, a su vez, fue emitida sin cumplir con el requisito previo de evaluación.

Si bien es cierto que la propia Regla 9.4 de Procedimiento Civil, *supra*, faculta al tribunal a suspender la autorepresentación e incluso a imponer sanciones cuando una parte incumple con sus deberes procesales, ello presupone que el tribunal haya permitido inicialmente la comparecencia *pro se* tras evaluar los criterios aplicables, o que, habiéndola permitido, posteriormente determine que la parte incumple con dichos requisitos. Tal escenario no se configura en el caso de autos.

Aquí, la peticionaria compareció desde el inicio por derecho propio y así lo hizo constar en su *Demanda*. Ante ello, el TPI debió evaluar su solicitud implícita de autorrepresentación conforme a los factores de la Regla 9.4 de Procedimiento Civil, *supra*. No obstante, omitió dicho análisis y, en su lugar, le ordenó anunciar representación legal, para luego sancionarla por no cumplir con una orden que resultaba, en efecto, incompatible con su comparecencia *pro se.*

En consecuencia, concluimos que la imposición de la sanción de cincuenta ($50.00) dólares carece de base legal, toda vez que se fundamenta en un incumplimiento derivado de una orden emitida en contravención a la Regla 9.4 de Procedimiento Civil, *supra*. Por tanto, procede su revocación. Asimismo, resolvemos que el TPI erró al prohibir de forma categórica la autorepresentación de la peticionaria sin antes evaluar los criterios establecidos en la Regla 9.4 de Procedimiento Civil, *supra*. En consecuencia, corresponde devolver el caso al TPI para que realice dicha evaluación conforme a derecho y determine si procede autorizar la comparecencia por derecho propio.

## IV.

Por los fundamentos antes expuestos, expedimos el auto de *cartiorari* y **revocamos** el dictamen recurrido. Además, le devolvemos el caso al TPI para la continuación de los procedimientos conforme a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones